## BROUGHTON *v.* McGREW.

### (*Circuit Court, D. Indiana.* June 9, 1889.)

1. LIBEL AND SLANDER—WORDS ACTIONABLE PER SE.
In order that a charge of drunkenness may be actionable it is necessary to couple it with some business in which drunkenness is a disqualification.

2. SAME—BURDEN OF PROOF.
In actions for slander the burden of proof is upon the plaintiff to show that the essential words were uttered as averred in the complaint.

3. SAME—PRESUMPTION.
Plaintiff need not, in the first instance, offer proof that the words, if uttered, were false, but may rely upon the presumption of his good character.

4. SAME—MALICE.
Where the words are shown to have been uttered without justification malice is inferred.

5. SAME—PRIVILEGED COMMUNICATIONS.
Statements made before a meeting of the stockholders of a railroad company by a member, attributing drunkenness and incapacity to one of the officials, are privileged if made in good faith.

**6. SAME.**
The fact that attorneys of the company, not stockholders, were present at the meeting, at the request of the president and some of the stockholders, does not take away the privilege.

**7. SAME.**
But if such words were spoken to the attorneys, or to other persons not entitled to hear them, and were not addressed to the stockholders' meeting, they are actionable.

**8. SAME.**
The question whether the charge was uttered to influence the election of directors is immaterial.

**9. SAME—REPETITION OF SLANDER.**
Words repeated to persons who have previously heard them under circumstances making them privileged are not actionable.

**10. SAME—DAMAGES.**
Compensatory damages only may be assessed unless there is such clear want of ground for uttering the words as warrants an inference of ill-will or hatred.

**11. SAME.**
The circumstances under which the words were spoken, the persons to whom spoken, the character of the person making the charge, and the injury to the character of the person assailed, together with the effect upon his business, are the elements to be considered in assessing damages.

At Law. Action for slander by Frederick Broughton against William McGrew.

*James S. Frazer, Robert C. Bell,* and *Samuel L. Morris,* for plaintiff.

*R. S. Taylor,* for defendant.

WOODS, J., (*charging jury.*) The action is by the plaintiff, Broughton, against the defendant, McGrew, for slander. It is charged in substance that the plaintiff was an employe of the Chicago & Atlantic Railroad, as general manager and assistant vice-president, and that the defendant, intending to injure him in that employment, maliciously uttered of him certain slanderous words. Omitting the explanatory phrases in the pleadings, and reading directly, it is charged that the defendant said of the plaintiff: "He has been drunk frequently, and you can't expect his subordinates to remain sober when he furnishes them such an example." That is one set of words. Another set: "He went over the road in his car, and there are people here who can tell you what condition he was in. I think the road-master was with him, but I am not sure. He was drunk, and staggered. He has been drunk in his office, and damning the patrons of the road." These are the words charged in the first paragraph of the complaint. In the second paragraph of the complaint, after reciting the employment of the plaintiff, it is charged that the defendant spoke of him these words: "It is generally reported that Broughton is under the influence of liquor half his time. I am reliably informed that he is unfit to do business." These last words, in themselves, contain nothing actionable. They have significance only in connection with the previous words, which are the gist of this paragraph of the complaint, namely, "that Broughton is under the influence of liquor half his time." That is the essence of the charge in this count.

Now, it is not actionable, or slanderous, in the sense of the law, to

charge a man generally with being drunk, or being in the habit of getting drunk, or having been drunk. In order that such a charge be actionable it is necessary to couple it with some business in which drunkenness is a disqualification, or tends to constitute incapacity; that is to say, some business in respect to which the charge of drunkenness would tend to injure the party.

The burden of proof is upon the plaintiff to make out his case as he has alleged it to be. He must show that the defendant spoke of him in relation to his employment in the management of the railroad the words, or a substantial and essential part of the words, charged, and as charged. It is not necessary that the proof shall show that every word in the sentence was uttered just as averred, but it must be shown that the essential words were uttered. The words necessary to convey the meaning alleged must be shown to have been uttered as charged. It is not enough to show that fragmentary parts of sentences or words taken from different sentences uttered by the defendant, if put together, would support the allegation. It must appear that the defendant used sentences containing substantially the same words as are charged in the complaint.

It is not necessary that the complainant shall, in the first instance, offer any proof bearing directly on his previous good character, or proof that the words, if uttered, were false. He can rely, in the first instance, upon the presumption of good character, without offering proof on the subject. When he has made proof that the words were uttered as charged, the jury will presume that they were false unless proof to the contrary is introduced. While the burden is upon the plaintiff to make out his case as charged, with proof, he is helped out in this respect by the presumption, and is under no necessity to offer direct proof upon the subject.

It is also alleged that the words were maliciously uttered. Malice, too, may be presumed without direct proof. If one has uttered slanderous words of another, and the proof shows that they were spoken on an unjustifiable occasion, malice may be inferred. Malice does not necessarily mean actual ill will or hate. The law presumes a wrongful intention where the words are shown to have been uttered without justification.

Now, in defense, the defendant has put upon paper a general denial of the complaint, denying that he uttered the words, and also two affirmative defenses, which, however, do not seem to be essentially different. In one it is alleged substantially that on the 3d day of September, 1885, there was a meeting of the stockholders of the railroad company on whose road the plaintiff was employed; that they met for the purpose of electing directors and for the doing of other business; that the president of the company and directors and stockholders were present, and that the words charged, if uttered at all, were spoken at that meeting, and were therefore privileged communications, and not actionable; that he had the right at the stockholders' meeting, in the presence of the stockholders and board of directors and the president of the road, to bring these matters to their attention. It is averred that he had been informed beforehand in respect to the subject in such way as to create in his mind a belief, and that in fact he did believe, that the plaintiff

was in the habit of getting drunk, and had ridden over the road in his car in a drunken condition; and that, if he did utter the words alleged, it was done on that occasion.

The second affirmative defense contains a further statement to the effect that Mr. Jewett, president of the road, was present, and made inquiries of the defendant in respect to his objections to the management of the road, and that what he said was in response to these inquiries by the president at this meeting of the board of directors, and was therefore privileged.

The question for you first to consider in logical order is, were the words uttered as charged, or any set of the words? There are three or four different sentences in the complaint which McGrew is charged with having spoken in relation to the plaintiff in connection with his office as manager of the railroad. Has it been proven to your satisfaction that McGrew did utter any one of those sentences substantially in the words stated in the complaint? If so, the plaintiff is entitled to recover, unless some matter of defense is established. Now, all questions of fact are for the jury, and this question of the utterance of words as much as any other. So, too, in respect to the credibility of witnesses, and the weight to be given to their testimony. I have noticed in the progress of the argument that counsel have given you their opinions; have told you about their acquaintance with the witnesses; and that they knew them to be good men or bad men, or the like. All this was out of the proper line of argument. Counsel have no more right in the course of argument to speak of things not proven in respect to the character of a witness in the case than they have to state any other fact not in evidence. It is for you to judge, in the light of all the circumstances, of the force of the testimony before you, whether in depositions or delivered orally. If the witness was before you, you have the benefit of having seen what kind of a man he is, and can make your estimate of him accordingly. I shall not attempt to review the evidence upon the question whether the speaking of any of the words, or any set of the words charged, has been sufficiently proven. If the preponderance of the evidence fairly satisfies you that the words were uttered as charged the plaintiff will be entitled to your verdict unless the words were privileged; and that leads to the inquiry whether the words, if spoken, were privileged or not. It is right under some circumstances to utter words which otherwise would be slanderous, the words being privileged by reason of the circumstances under which they are uttered. The particular privilege set up in this case is that the defendant himself was a stockholder in this railroad company; that there was a meeting of stockholders, and that at this meeting, if at all, he uttered the words charged. It appears in the evidence, without dispute, that the president of the road was present at the meeting and some of the directors at least and a number of attorneys. I believe it is shown that two of these attorneys were not stockholders. Whether they were in the room at the time the meeting was in progress, and when Mr. McGrew made whatever statements he did make in the course of the meeting, is a matter of fact for you. I will say, however,

that at such a meeting as that is shown to have been, McGrew, or any party interested in the railroad, had a right—it was his privilege—to communicate to the president of the road and to the directors and every stockholder present whatever he knew, or had reason to believe, and did in fact believe, in respect to the management of the road or the conduct of any of its employes; and if Mr. McGrew did use, in that meeting, the words charged, or any of them; and if upon information that he had received, either from others or by his own observation, or from both sources, he believed that the statement which he made was true,—then the fact that it was made in that meeting would constitute the communication one of privilege, and not actionable.

The suggestion is made that the presence of parties who were not stockholders destroys this privilege. So far as I have observed, the evidence does not reveal the presence of any who were not stockholders, except two or three attorneys who have been witnesses. The testimony shows that these gentlemen were present at the instance and request of the officers of the road,—of the president, at least, and possibly of some of the directors. There has been some criticism upon these attorneys for being present. I make no comment upon that. It is aside from anything I need instruct you about, and is left to your own judgment. I do say that these gentlemen, who were in the employment of the company as attorneys, being thus present at the request of the president of the road, their presence did not take away from Mr. McGrew, or any other director present, the right to make communications of the kind in question, directly to the board, or to the president or to the stockholders assembled there. Their presence in that manner did not affect the privilege or right of a stockholder to criticise the management of the road or the conduct of employes.

Something has been said to the effect that the election of directors was over when the words were spoken, and therefore they could not have been uttered with a view of affecting the election. The privilege, however, in such a case, does not depend upon the fact that the election had or had not been held. The president was there, and some of the directors, and the privilege might well and properly be exercised after the choice of the new board, in order to indicate what reforms ought to be accomplished in the management; and it is not material whether or not the defendant had tried to get a new board of directors. That fact would not affect the right of any officers remaining or coming in control to make the necessary investigation and correction, if there were such evils prevailing as stated in the words complained of; so that the question whether the election had taken place is not material to the determination of this question of privilege. If the utterance was to the people who had the management of the road, or some of them, and in the presence of others who were interested in it, and who were called to participate in that meeting, it was privileged, no matter to what stage the business had reached.

But a question arises which is somewhat different; that is, whether the meeting had not terminated, and whether the words were uttered to any who were not entitled to receive them as privileged communications. It

is claimed on behalf of the plaintiff, and I believe his counsel rest their case on that assertion, that the words were not uttered in the room where the meeting was held, but were spoken outside of the door to attorneys and to men who were not members of the board, or interested in the board directly. Now, whether the words were uttered outside of the door or inside does not determine necessarily whether they were privileged or not. There might be a meeting going on where the party would have the right to utter the words, if he chose to, to those who were interested in the subject, and there he might turn aside to some individual who was not interested, and utter the words to him without any justification for so doing; so that whether these men had passed the door or were still inside the room has little to do with the question. If the words were really addressed to an individual or individuals having no interest in the subject, and not to the meeting, nor to others who were concerned in the management of the road, they might be actionable or slanderous. Now, then, were the words uttered in the hall to Judge Slick and Mr. Johnson and Mr. Attlebury, and overheard by Mr. Peterson, slanderous? Strictly speaking, the words so uttered would not be privileged if then spoken for the first time; but if the same words had been uttered in the meeting, or words to the same effect, embodying the charge of drunkenness against Mr. Broughton, so that the accusation became known to all present, in a way to be privileged, and then, as the parties were leaving the room, there was a repetition of the matter by Mr. McGrew to men who were present and heard the words first uttered, I would say that no action ought to be maintained for the repetition of the words to those who had already heard them when it was proper to utter them. It was a matter from which it could not be said any damage could result, because the parties had already heard it; especially if the second utterance occurred in a discussion between the defendant and these attorneys, who were controverting his statement made in the meeting. In determining, therefore, whether or not the utterance of the words to these attorneys is an actionable or slanderous utterance it is important for you to determine whether substantially the same charge had first been made in the meeting, and to the meeting, in a way to be privileged. If the charge had not been made to the meeting, and this was a voluntary utterance by the defendant to these attorneys, then, in my judgment the words ought not to be held privileged, and I so instruct you; and you would be entitled to find for the plaintiff on account of what was thus voluntarily said to the attorneys, whether done inside the door or outside the door. If the defendant got the attorneys aside, or happened to be aside with them, and brought up for the first time the charge against Mr. Broughton, it was a slanderous and unjustifiable charge, which would support the action; but if it was a mere repetition, growing out of a discussion in respect to what he had said in the meeting on the same subject, then I think the privilege ought to be considered as covering the repetition of the words, and so instruct you.

Many things have been said, gentlemen, about other questions,— whether the road was in good condition; whether McGrew had cause for

seeking a change of management; and whether he was acting in good faith in regard to the interests of the road. Much has been said about getting control of the corporation, or organizing it in the interest of a scheme. All these things are remote in their bearing. The question for you, first and mainly, is whether McGrew uttered these words about the plaintiff, and whether he uttered them without justification. He claims he did it justifiably in discharge of his duty to the board. The mere fact that he uttered them to the board would not necessarily be a justification. He must, of course, have done it in good faith. If he uttered the words to the board, and did not believe them to be true, there was for that, of course, no justification. If you find he did make the charge of drunkenness against Broughton as alleged, did he do it in good faith? He has testified, and much proof has been introduced in respect to the information that he had on the subject. If he had been told by creditable men of facts which fairly led him to believe, and entitled him to believe, there was something wrong in Broughton's conduct in this respect, he had the right to bring the matter up, and you may presume he did it in good faith unless the evidence shows the contrary. Of course, if the evidence convinces you that he did not have good cause to bring it forward, had not received information that would warrant a prudent man in bringing such a charge forward, you will say he did not act in good faith, and will not give him the benefit of the privilege to which otherwise he might be entitled. Every presumption is in favor of good faith if he had information on the subject that a reasonable man might have acted upon.

If you find for the plaintiff, then the question arises, what damages will be proper? The action, as I have already explained to you, proceeds upon the theory that the injury has affected the plaintiff in his business. The mere charge of drunkenness is not an actionable injury, and is significant in this case, because the injury that you will consider will have reference to the effect of the slander upon the complainant's business and his business prospects, not upon his character as an individual in a community, because in that respect all men are affected alike by an accusation of drunkenness, and the law does not recognize it as good cause for an action except when it affects the man in his business or prospects of business, and therefore the jury, in determining the amount of damages to be awarded, must revert to that phase of the subject. Damages may be compensatory, and they may be vindictive or punitive. Punitive or vindictive damages are assessed, if at all, on the ground of public policy, and not on the ground that the plaintiff has any right to the money. In order to prevent a repetition of a wrong the jury may assess vindictive damages, in the way of punishment, which will go to the plaintiff because assessed in his suit, but not on the theory of compensating him, so much as of punishing the wrong-doer. Punitive damages, however, are not to be assessed unless the words were not only wrongful, but were uttered with actual malice on the part of the defendant; so that, unless the evidence shows to you that the defendant uttered the words with actual malice, ill will, or hatred towards the

plaintiff, or with such clear want of ground for doing it as to warrant an inference of ill will or hatred, you will assess only compensatory damages. Compensatory damages are for the purpose of making whole the plaintiff for the injury done him, for the injury in respect to his business and business prospects that has actually arisen or is likely to arise, from the words uttered in the manner and at the time they were spoken. Of course, there is no fixed standard by which such damages can be measured. Characters have no price in the market. The extent of the injury must be determined from the evidence. The jury must exercise sound judgment and discretion. You have a right to consider all the circumstances in the case. If the slander was uttered under one set of circumstances it might have greater effect than if uttered under other circumstances, and when uttered to some persons it might do more harm than when uttered to others. In this case there is some evidence that there had been rumors of these things circulating in the community, rumors of charges of this kind, before McGrew uttered the words. If that is a fact, you have a right to take it into consideration. A man that starts a false report may be held to greater responsibility than a man who merely repeats or adds to the story. The fact that the defendant uttered the words on his own authority, or on the authority of others of whom he had heard the reports, may be taken into consideration. If he said these things on his own authority, claiming to know them himself, that would tend to give them greater weight and currency than if he professed merely to speak from rumors or information derived from others, indicating the source of his information. The character of the defendant himself, his standing in the community, is a matter which you may consider in determining the amount of damages. A man of high character, of known force and influence in the community, may injure another by talking about him more than a man of less character could do. So, on the other hand, the character of the party spoken about is a matter that may be taken into consideration. If he has a well-established character, that there is less likelihood of the slander hurting him, may be considered, whereas, if he was a new man starting in the effort to build up a reputation, the same slander might well cause more harm. You will consider the persons to whom the slanders were uttered, and the relation they occupied to the parties. These attorneys of the road were not in a position, as I have instructed you, to be treated as officers of the road, to whom such communications could be made as matter of privilege; yet, I think, if Mr. McGrew had gone to the attorneys of the road with the accusation against Mr. Broughton, and urged upon them to go to Mr. Jewett with the matter, I am not sure but that his action might have been privileged. It would certainly be a strong circumstance to rebut malice. Upon the circumstances as stated here, however, while I instruct you that if the words charged were uttered to these attorneys in the first instance, and not as a repetition of what was said in the meeting, they were not matters of strict privilege; yet the fact that these gentlemen were attorneys of this road, and had friendly relations to the officers, or to the plaintiff, you may consider in deter-

mining how much damage ought to be assessed. If these three gentle·· men were the persons to whom these words were spoken, you can consider their relations to the plaintiff and the likelihood of words spoken to them concerning him reaching the public through their agency, and to what extent they would be likely to cause him injury. The plaintiff cannot claim damages for acts of his own or for the publicity given to the matter by the bringing of this suit, because that was brought of his own choice. It is for you, if you find for the plaintiff, to say upon all the facts and circumstances in proof what damages you think ought to be awarded, whether compensatory, or both compensatory and vindictive.