## PALMER v. NEW YORK NEWS PUB. CO.

(Supreme Court, Appellate Division, First Department.   June 28, 1898.)

1. LIBEL—MITIGATION.

One who publishes a newspaper libel cannot set up or prove in mitigation that the same libel has been published by other newspapers, nor that the injured party has also brought actions against them.

2. SAME—PUNITIVE DAMAGES.

In an action for libel it appeared that, before action brought, the plaintiff had demanded a retraction, and that the defendant, who had published the libel without investigating its truth, refused, unless the plaintiff could prove its falsehood.   *Held*, that a charge to the jury that they might allow punitive damages if, and only if, they found from the evidence that the libel was published wantonly, negligently, or maliciously, was not open to exception.

3. SAME—ELEMENTS OF DAMAGE—MENTAL SUFFERING.

The mental suffering and humiliation which are necessarily caused by the publication of a libel reflecting upon the character of a reputable man are elements of general damages, which the jury may consider, although not pleaded or proved.

4. SAME—EXCESSIVE DAMAGES.

A newspaper having a circulation of 100,000 copies published a libelous article, charging with dishonesty a person whose business involved grave responsibilities, and required that he should have, and be able to retain, the confidence of those who employed him.   His employers were men of consideral financial responsibility, and he was not infrequently intrusted with the management of affairs of great interest.   In an action to recover damages, the jury awarded him $7,500.   *Held*, that the court could not say that this was excessive.

Appeal from trial term, New York county.

Action by Tyndale Palmer against the New York News Publishing Company.   From a judgment on the verdict, and from an order denying a new trial, defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

Delos McCurdy, for appellant.

James R. Soley, for respondent.

RUMSEY, J.   The action was to recover damages for a libel published concerning the plaintiff by the defendant, the publisher of a newspaper in the city of New York.   No question of fact is presented by the appeal, but it stands solely upon certain exceptions taken upon the trial, which will be considered in the order in which they were presented by the appellant.

It appears from the evidence that the libel was published, not only by the defendant's newspaper, but in other newspapers throughout the United States.   The defendant pleaded in mitigation of damages that, the identical libel having been published in regard to the plaintiff in many other newspapers throughout the United States, the plaintiff had begun various actions against such papers to recover the damages which he alleged he suffered by the publication of the same article; that the cause of action was substantially the same; and that in all of said actions the plaintiff claimed damages to the extent of over $200,000 in the aggregate.   Upon the trial the

defendant proposed to prove the facts thus set out in mitigation of damages. The proof offered was to the effect that the plaintiff had commenced actions against various other newspapers in this and other states of the Union for the publication of this same libel. It was, of course, not proposed to show that the cause of action was the same, because the libel, although substantially like the one published by the defendant, was published by another defendant, and at another time; but the proof proposed to be made was substantially that the same story had been circulated throughout the United States with regard to this plaintiff by publication in other newspapers. This evidence was excluded and the defendant excepted, and it now insists that such exclusion was error. We are utterly unable to conceive of any theory on which this evidence was competent for any purpose. There was no claim that any damages had been recovered in these actions, although we do not mean to suggest that, if there had been such a claim, it would have altered the situation, legally speaking, in the least. If the offer had been to prove that this identical publication had been made by two or more persons acting in concert, and that the plaintiff had brought separate actions against each person for the same publication of the libel, even that would have been no defense, nor could it have been proved in mitigation; nor would it have been any defense or mitigation of damages if the plaintiff had recovered a judgment against one of the persons publishing this libel. When several persons unite in the publication of one libel, a tort is committed by each one of them for which he severally is liable to the plaintiff, and the plaintiff is entitled to a judgment against each one for all the damages which he suffers by reason of the libel. 13 Am. & Eng. Enc. Law, 372. It is quite true that he is entitled to but one satisfaction, and, when one of the judgments has been paid, the collection of the others will be restrained (Breslin v. Peck, 38 Hun, 623); but until he has had one satisfaction he is entitled to maintain as many actions for the same libel as there are defendants who have been engaged in publishing it. A fortiori, where a libel has been published against the plaintiff by different persons at different times, is he entitled, not only to pursue each publisher, but to whatever damages the jury may think that each publication may have caused him. Each libel is a separate and distinct tort, and each person who sees fit to publish it is separately liable to the plaintiff for whatever damages may be fairly said to accrue. If 100 persons at 100 different places make 100 separate publications of a libel in 100 different newspapers, the fact that this simultaneous action of all of them has ruined the plaintiff's character is no reason why 1 of them, when sued for it, should shelter himself behind the acts of the other 99, and say that $^{99}/_{100}$ of the plaintiff's character was ruined by the others, and therefore he is liable for only $^{1}/_{100}$ part of the damage. The true rule is, and must be, that whoever publishes a libel publishes it at his peril, and he cannot mitigate his damages because some other reckless or evil-disposed person has incurred the same liability that he has for the same story. Bennett v. Salisbury, 45 U. S. App. 636, 24 C. C. A. 329, and 78 Fed. 769; Smith v. Publishing Ass'n, 5 C. C. A. 91,

55 Fed. 240. For each publication of a libel the plaintiff is liable de novo, precisely as though the libel had not been published before (Odgers, Sland. & L. 159, 160), and he must answer for that publication for all the damages which the jury have a right to say the publication caused. The acts of other publishers were independent acts, which, so far as this defendant was concerned, were no protection to him, and the injuries inflicted upon the plaintiff by them did not redound to the defendant's benefit. Van Ingen v. Publishing Co. (Com. Pl.) 35 N. Y. Supp. 842; Folwell v. Journal Co. (R. I.) 37 Atl. 6; Wilson v. Fitch, 41 Cal. 363; Hayes v. Press Co., 127 Pa. St. 642, 18 Atl. 331.

The defendant made it appear that the information upon which it relied for the publication of this libel was given to it by the United Press Association, which seems to be an organization of several newspapers for the purpose of collecting and disseminating to its members the current news. The claim of the defendant in this regard was that it had employed the United Press for this purpose for a considerable length of time, and that it placed confidence in the accuracy of the information which it received. The publisher of the paper testified that this was a news item; and that he did not consider it necessary, in general, to verify such items as he received from the United Press, because he considered that a reliable source of information. The article was therefore published, as it was claimed, upon the authority of the United Press, without any attempt by the publisher of the newspaper, or any one engaged in publishing it, to verify its truth. The fact that it was published in reliance upon the statement of some other person is not a defense. Morey v. Journal Ass'n, 123 N. Y. 207, 25 N. E. 161. But the defendant introduced the evidence for the purpose of enabling it to say that it received this scandalous article from a reliable source, and therefore was not liable for punitive damages, although it made no effort to ascertain its truth before giving it to the world. In view of that claim, and the proof under it, it would undoubtedly have been competent for the plaintiff to show that the United Press Association was not a reliable and accurate collector of information of this class which is called news, but that it had furnished to the defendant for publication other scandalous items, which, upon examination, had proved not to be true, and thus to have shown the jury that it was not safe to rely upon the material sent by the United Press for publication. This was so ruled by the learned justice at the trial term. Thereupon the plaintiff undertook, upon the cross-examination of one of the defendant's witnesses, to make proof of that kind, and for that purpose he showed to the witness the answer of the defendant in another action, and asked him to identify it. This was done under objection. The plaintiff thereupon offered the answer in evidence, but it was excluded upon the defendant's objection. Of course, the defendant had no reason to complain of this ruling, because the answer, whatever it was, was not permitted to go before the jury, and there was no information with regard to it. The witness who identified the answer was the counsel of the defendant, and he

was thereupon interrogated as to the source whence he obtained the
information upon which he relied in framing the answer.    The ques-
tions in that regard were not objected to, and he answered them.
As they were not objected to, the defendant had no ground of com-
plaint because the witness was permitted to answer them.    But
an examination of the evidence which he gave shows that it could
not by any possibility have resulted in any harm to anybody, be-
cause it practically gave no information with regard to anything.
No other evidence on that subject was sought to be elicited from
that witness; but, after the defendant's case had closed, the plaintiff
put upon the stand the attorney in the action of Smith against this
defendant, and proved by him that he brought an action against
this defendant for libel on the 13th of June, 1890, and that the an-
swer was served on the 27th of February, 1892.    What was the
result of that action, or whether the action was ever tried, was not
made to appear, and no questions were asked concerning it.    A
careful consideration of the case leads us to believe that there was
no possible aspect of it in which this evidence could have been of
any materiality whatever.

In its charge the court said to the jury that they might consider
from the evidence whether the act was malicious, or whether it was
such a negligent act, or so grossly negligent, or so wantonly done,
that the defendant should be punished,—that an example should be
made of him, so that the publishers of a paper hereafter should not re-
peat it, or that other publishers should be warned not to publish
similar articles.    But the jury were expressly told that the plaintiff
was not entitled to recover punitive damages unless they found from
the evidence that the article was published wantonly, negligently, or
maliciously.    In this statement of the law, clearly no mistake was
made.    Bergman v. Jones, 94 N. Y. 51; Smith v. Publishing Co.,
5 C. C. A. 91, 55 Fed. 240; Smith v. Matthews, 152 N. Y. 152, 46 N.
E. 164.    In the case of Bergman v. Jones, supra, it was held that,
where a libelous article was published of the plaintiff, and the falsity
of the article was shown, that of itself was sufficient evidence of mal-
ice to warrant the jury in giving punitive damages, if they saw fit to
do so.    In this case there was no claim that the article was not false.
Its falsity appeared affirmatively by the evidence of the plaintiff, and
there was no effort on the part of the defendant to prove anything
to the contrary.    But, in addition to that, there was evidence from
which the jury might have found that there was express malice in this
publication.    It appeared that the plaintiff, before bringing his ac-
tion, had made an effort to obtain a retraction, but that the effort
was entirely futile.    All that he succeeded in getting was that, if he
could furnish proof of the untruthfulness of the article, the defendant
would be very happy to make such retraction as might be just and
proper in the premises.    The presumption was that the article was
false, and when the defendant was called upon to make a retraction of
it it was its duty, unless it had reason to believe that the article
was true (and of that there is no claim), to retract the charge as fully
and broadly as it had been made.    A refusal to do this, coupled with
the manner of the publication, would clearly warrant the jury in

coming to a conclusion that the article was published wantonly at least, and with utter disregard of the rights of the plaintiff. It has been held by this court, and is undoubtedly the law, that a publication under those circumstances would warrant the jury in giving to the plaintiff exemplary damages. McMahon v. Bennett (June 10, 1898) 52 N. Y. Supp. 390.

The learned judge, in his charge, said to the jury that they might give to the plaintiff damages to compensate him for the mental suffering, sense of shame, and wounded honor which he has endured; and to this charge an exception was taken. The defendant insists that there was no evidence that the plaintiff endured any mental suffering, or any sense of shame or wounded honor, and that he is not entitled to damages for any such thing unless he makes it appear affirmatively that such conditions exist. This is not the law. A publication of a libel which reflects upon the character of a reputable man must necessarily cause him more or less mental suffering and humiliation, and these things are elements of general damages, which the jury may taken into consideration. They need not be pleaded, nor need any proof be given of them, because it will be assumed that such things follow the knowledge of the publication of a libel against an honest man. For that reason the exception to that portion of the charge was not properly taken.

The defendant complains of the size of the verdict, which was $7,500, and insists that it is excessive. That we cannot say. The paper in which this libel was published had a circulation of 100,000, very largely in the city of New York. The plaintiff's business was one which involved great responsibilities, and required that he should have, and be able to retain, the confidence of those who employed him. His employers were men of considerable financial responsibility, and the plaintiff was not infrequently intrusted with the management of affairs of great interest. No charge could be made against him that would be so destructive of his usefulness as the charge of dishonesty; and the circumstances under which this charge was made, and the nature of the charge, were such as to seriously impugn his honesty and reliability. There is no reason to suppose that the damages given by the jury were any more than fair and proper in view of all the circumstances which are made to appear in the case. No other objection to this judgment is suggested by the defendant's counsel.

The judgment and order therefore must be affirmed, with costs. All concur.