[Civ. No. 11907. Second Appellate District, Division Two.—December 21, 1938.]

R. ALLEN BEHRENDT, Respondent, v. THE TIMES-MIRROR COMPANY (a Corporation), Appellant.

Cosgrove & O'Neil and F. B. Yoakum, Jr., for Appellant.

Raymond L. Haight, Arthur L. Syvertson, Lyle C. Newcomer, Jr., Haight, Trippet & Syvertson and Harkness & Lehners for Respondent.

WOOD, J.—This is an action for damages for libel. A jury returned a verdict in favor of plaintiff in the sum of $10,000 as compensatory damages and the further sum of $15,000 as punitive damages and judgment was accordingly entered. Thereafter upon motion for a new trial the trial court made an order that a new trial would be granted unless plaintiff should reduce "the judgment entered to the sum of $10,000 and costs, the amount of the compensatory damages awarded". In accordance with the conditional order of the court plaintiff remitted that part of the judgment over and above the sum of $10,000 awarded as compensatory damages.

The libel which is the basis of the action was published by the defendant in its newspaper, "Los Angeles Times", on May 24, 1937. The libelous matter was published in three separate editions of the newspaper and each edition is made the basis of a separate count. It was published of and con. cerning plaintiff that he had been arrested, charged with the theft of narcotics and had himself used the stolen nar-

cotics as an addict until his health had become destroyed; that he could not be arraigned on the charge because of his physical condition. The statements were entirely untrue. At the time of the publication plaintiff was a physician and surgeon of the age of 32 years. He was a graduate of Rush Medical College and had been established for several months as a practitioner in an office in Los Angeles. He was well and favorably known in Los Angeles and had previously attained prominence as a football player at the University of Southern California. He was engaged to be married and the date of the marriage had been set for May 25, 1937.

Ralph A. Behrend, who on Friday, May, 21, 1937, was resident physician at the Metropolitan Water District Hospital at Banning, was on that date arrested on the charge of stealing narcotics and was brought to Los Angeles by police officers. He was taken by the officers to the home of Dr. Carey, the chief of the medical staff of the Metropolitan Water District. He was unmanageable and Dr. Carey and the officers took him to the Hollywood police station and the next morning he was taken to Riverside County Hospital for confinement and treatment. It will be noticed that the name of the plaintiff, R. Allen Behrendt, is similar to that of the party arrested, Ralph A. Behrend, the initials being the same. An interesting fact to be noted is that the plaintiff had been resident physician at the Metropolitan Water District Hospital at Banning before this position was held by Ralph A. Behrend.

On Sunday afternoon, May 23d, a Times reporter was told by one of the officers at the Hollywood police station that he had missed a story concerning the doctor who had been in the station on Friday afternoon and who was being detained in Riverside. The reporter saw the records in the Hollywood station where the name "R. A. Behrend" appeared, together with a notation that he had been taken to Riverside. The reporter telephoned to the editorial rooms of the Times with the suggestion that if the man involved was the one who had been a football player at the University of Southern California it would make a good story. One of the Times staff telephoned to the office of the sheriff of Riverside and made inquiries concerning the identity of the man who had been taken to the Riverside County Hospital. Without here setting forth the details of the evidence concerning the efforts of the

staff of the Times to investigate the identity of the person under arrest it is sufficient to say that the plaintiff claims that the publication was made without reasonable investigation and that the defendant claims that the publication was made "after investigation of the facts stated and upon dependable and reliable information".

The defendant voluntarily published in the Times of May 25, 1937, a retraction of the statements made concerning plaintiff and explained the reasons why the mistake in identity had been made. The retraction was accompanied by a photograph of plaintiff and was printed in several editions on that date. On June 10, 1937, plaintiff served upon defendant a demand for a retraction in accordance with the provisions of section 48a of the Civil Code. On June 18, 1937, defendant printed a retraction which it claims was published, "in as conspicuous a place and type" as were the statements which formed the basis of the litigation. The plaintiff claims that the retraction was not printed in as conspicuous a place and type as were the articles of which complaint is made.

It is contended on behalf of defendant that the trial court erred in refusing to allow the introduction of evidence to the effect that other newspapers in the city of Los Angeles had on May 24, 1937, printed statements similar to those printed in the Times. It is particularly urged that the jury should have received this evidence in mitigation of the amount of compensatory damages. In *Wilson* v. *Fitch,* 41 Cal. 363, a situation was presented similar to the one now before us and it was held that the evidence of other publications was inadmissible. In that case the article complained of was published in the *Bulletin.* The defendant sought to show that a similar article had been published three days earlier in the *Call.* The particular point now raised by the defendant was not discussed but it is pointed out in the opinion that the publication in the *Call* could be "treated in no other or more favorable light than as a printed rumor". The point presented by defendant has been directly passed upon in *Palmer* v. *New York News Pub. Co.,* 31 App. Div. 210 [52 N. Y. Supp. 539], and also in *Hagener* v. *Pulitzer Pub. Co.,* 172 Mo. App. 436 [158 S. W. 54]. In both of these cases it was held that publications of similar libels in other newspapers may not be shown for the purpose of reducing the amount of the compensatory damages. The theory upon which the evidence is held inadmissible is sound and is aptly

expressed in *Palmer* v. *New York etc. Co., supra*: "Each libel is a separate and distinct tort, and each person who sees fit to publish it is separately liable to the plaintiff for whatever damages may be fairly said to accrue. If 100 persons at 100 different places make 100 separate publications of a libel in 100 different newspapers, the fact that this simultaneous action of all of them has ruined the plaintiff's character is no reason why 1 of them, when sued for it, should shelter himself behind the acts of the other 99, and say that 99/100 of the plaintiff's character was ruined by the others, and therefore he is liable for only 1/100 part of the damage. The true rule is, and must be, that whoever publishes a libel publishes it at his peril, and he cannot mitigate his damages because some other reckless or evil-disposed person has incurred the same liability that he has for the same story."

■ Complaint is made of the ruling of the trial court receiving in evidence testimony that plaintiff was not a user of narcotics. It was admitted by the pleadings that plaintiff was not a user of narcotics but we know of no rule which prevents plaintiff from presenting testimony concerning the facts, even though they be stipulated by both parties. (*Davis* v. *Hearst*, 160 Cal. 143, 187 [116 Pac. 530].) It was within the discretion of the trial court to permit plaintiff to prove the allegations which had been conceded. As pointed out in *Martin* v. *Pacific Gas & Elec. Co.*, 203 Cal. 291, 299 [264 Pac. 246], "a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight".

■ Complaint is also made of the ruling of the court by which plaintiff was permitted to testify concerning his condition of mind resulting from the publication of the libel. Defendant particularly criticizes the form of some of the questions. In one instance plaintiff was asked, "In your own mind Doctor, what did you think about your own professional career?" The witness answered, "I thought my—in as far as the practice of medicine in this community, it was finished on my own part." It was proper for plaintiff to prove that his feelings had been injured and that he believed that the libels had affected his standing in the community and the happiness of members of his family. These matters could be presented as tending to prove injury to his feelings. (*Earl* v. *Times-Mirror Co.*, 185 Cal. 165, 171 [196

Pac. 57].) Although some of the questions might have been improved upon, the answers given concerned the feelings and state of mind of plaintiff and were proper for presentation to the jury. Defendant has not been prejudiced by the ruling.

■ The defendant contends that the court erred in receiving evidence of the physical suffering of plaintiff and in later instructing the jury on the subject of compensatory damages that they might "take into consideration the physical pain and suffering, if any, inflicted on plaintiff by the publication of the articles". It was established that plaintiff suffered frequent urination and other symptons of extreme nervous shock beginning immediately after the publication. Dr. Bennetts, a witness called by plaintiff, testified concerning the passage of a stone from plaintiff's kidney to the bladder several months after the date of the publication. He testified that an extreme nervous shock would aggravate the symptoms of the condition which he described; that "the condition may have been aggravated or precipitated by such anguish or such mental shock". The witness was cross-examined at great length concerning the passage of the kidney stone and he explained to the jury the nature of the ailment and the probable effects upon plaintiff's condition of the nervous shock which he had received. The jury was not misled by the ruling admitting this testimony for they were carefully instructed by the court that the damages allowable were such as would "compensate the plaintiff for the injury he has actually sustained as the natural and probable consequence of the libelous publication".

■ Although there is some conflict in the authorities, the better reasoned cases hold that damages may be awarded for physical suffering as well as mental anguish. (*Sweet* v. *Post Pub. Co.*, 215 Mass. 450 [102 N. E. 660, Ann. Cas. 1914D, 533, 47 L. R. A. (N. S.) 240]; *Burt* v. *McBain*, 29 Mich. 260; *Garrison* v. *Sun Printing & Publishing Assn.*, 207 N. Y. 1 [100 N. E. 430, Ann. Cas. 1914C, 288, 45 L. R. A. (N. S.) 766]; *Osborne* v. *Leach,* 135 N. C. 628 [47 S. E. 811, 66 L. R. A. 648]; *Hatt* v. *Evening News Assn.*, 94 Mich. 119 [54 N. W. 766]; *Warner* v. *Press Pub. Co.*, 132 N. Y. 181 [30 N. E. 393].) No sound reason can be advanced why damages should not be awarded for physical suffering as well as mental anguish provided of course that the physical suffer-

ing be caused by the libel and be a natural and probable result of its publication.

Further conflict appears in the authorities on the question whether it is necessary to specifically plead physical injury or suffering. In *Sweet* v. *Post Pub. Co., supra,* it was urged on appeal that the trial court had erred in admitting evidence of illness suffered by the plaintiff in consequence of the libel. In the complaint plaintiff had alleged that he was an attorney at law and that the publication of the libel had caused him loss in his business and greatly injured his feelings and his reputation in his profession. In sustaining the judgment the reviewing court held that "under these counts the plaintiff was entitled to recover for mental suffering and distress and for illness suffered by him in consequence of the libel". In *Burt* v. *McBain, supra,* an action for slander, the appellant urged that the trial court had erred in receiving evidence that the plaintiff's health had been affected. The reviewing court thus disposed of the point: "Another error assigned is, that plaintiff was permitted, although the declaration did not claim special damages, to show that in consequence of the slander she was excluded from the society in which she formerly moved, and was affected in mind and health. But these results are the natural, and we might also say the inevitable results of such a slander of a virtuous young woman, and they might be shown without setting them out in the declaration." In *Hatt* v. *Evening News, supra,* under a general allegation of damages, the plaintiff introduced evidence that he was rendered sick and unfit to work. In disposing of the contention that the injury should have been specially pleaded the court held that "under a declaration which sets out a libel which is actionable *per se,* it is not necessary, in order to introduce evidence of so-called special damages, to show that the results which naturally flow from the publication did in fact appear". Plaintiff's complaint contains the following allegation: "As a direct and proximate consequence of the publication of said articles, including their headlines and captions, the plaintiff has been caused to suffer a severe nervous shock and great mental anguish and humiliation . . . ". In accordance with those decisions which hold that physical suffering must be specially pleaded as well as under the decisions to which reference has just been made, this allegation must be held sufficient to justify the reception

in evidence of plaintiff's testimony concerning his physical suffering. Since the neural system is an important part of the human body, a severe shock to the neural system, causing suffering, can properly be said to occasion physical suffering.

The record discloses an additional reason why defendant may not complain of the ruling of the trial court on the subject of physical suffering. Plaintiff testified in detail concerning the effect of the libel upon him physically. No objection was interposed and defendant cross-examined at length on the point. Plaintiff was asked to describe his "physical reaction". He was also asked this question: "What was the situation with reference to your physical condition a week later?" On cross-examination counsel asked: "With reference to the mental anguish that you have referred to in your testimony that resulted from a reading of this article by yourself, I would like to ask a few questions, and the physical suffering that you also explained. Did this suffering result in loss of weight?" To this question plaintiff answered, "Yes, it did at the time". At one point the judge remarked: "I just thought I would inquire as to what the purpose of it is". Thereupon the attorney for the defendant stated: "Yes. I want to show just the condition of the man in so far as any nervous shock or any physical condition that is a result of reading this article and any mental anxiety, that is most likely to occur at that time." During the examination of plaintiff there was considerable discussion between counsel on the admissibility of testimony and counsel for defendant stated, substantially, that testimony concerning the physical suffering and condition of plaintiff was proper. Reference might be made to one example. Counsel for plaintiff asked the witness what was the effect of the publication upon his professional work. In objecting to this question counsel for defendant stated, "but as I understand the law, it must be the effect on him, it must be the result of mental anguish. He has been explaining it here at some considerable length, and the physical effect, and the effect on him mentally, emotionally, of reading the article, and we think it should be confined to that". Having taken the position at the opening of the trial that testimony concerning physical suffering was proper, having permitted such testimony without objection and having cross-examined the witness at length

on the point, defendant is not now in position to claim that it has been prejudiced by the ruling of the court in receiving the testimony and in instructing the jury that it should be taken into consideration. (*Jackson* v. *Snow*, 62 Cal. App. 56 [216 Pac. 60].)

█ A number of criticisms are leveled at the court's rulings in instructing the jury. Defendant requested the court to instruct the jury that punitive damages could not be awarded. The court did not give this instruction but did instruct the jury: ''Should you find that the defendant published the articles in question here wantonly, recklessly, and in utter disregard of plaintiff's good name and reputation and with wanton and reckless disregard for the truth or falsity of the statements made therein concerning plaintiff, you may from such evidence infer that the defendant acted maliciously and award exemplary damages to the plaintiff in such sum as you may deem just in view of all the circumstances revealed by the evidence.'' The court very elaborately and accurately instructed the jury on the subject of compensatory damages. As heretofore stated the jury returned a verdict for $15,000 exemplary damages but the trial court required plaintiff to remit the exemplary damages as a condition of the denial of the motion for a new trial. It must be presumed that the jury weighed the evidence and awarded compensatory damages in accordance with the instructions of the court. The judgment for which plaintiff seeks an affirmance is for compensatory damages only. Questions concerning exemplary damages have become moot. Our conclusion that defendant was not prejudiced by the giving of the instruction is in harmony with the decision in *Lightner Min. Co.* v. *Lane*, 161 Cal. 689 [120 Pac. 771, Ann. Cas. 1913C, 1093], a case in which the jury awarded $27,000 compensatory damages and an additional $27,000 as exemplary damages. The Supreme Court ruled that the evidence was insufficient to justify exemplary damages and held that the giving of an instruction on the subject of exemplary damages ''could be prejudicial only with regard to punitive damages included in the verdict, and the error can be sufficiently cured by reducing the judgment to the amount of damages allowed as compensation''.

█ The defendant requested the court to instruct the jury that ''the evidence in this case discloses that the retraction published by the defendant is a full, fair and com-

plete retraction of the article of which the plaintiff complains''. In place of the requested instruction the court gave instruction No. 22 as follows: ''The plaintiff alleges in his complaint that on June 10, 1937, he served upon the defendant a notice specifying the libelous statements and requested that the same be withdrawn. The defendant admits that this request for a retraction was served upon it and alleges that it has in fact published a retraction in as conspicuous a place and type in The Los Angeles Times as were the statements complained of, and within two weeks after the date of the service upon it of the notice and demand, to wit: on June 18, 1937. The written request for a retraction and the articles published by The Los Angeles Times thereafter on June 18, 1937, have been presented to you in evidence. You are to determine from this evidence whether or not the articles published by the defendant on June 18, 1937, constitute a retraction or a correction of the libelous publications in as conspicuous a place and type in The Los Angeles Times as were the statements complained of. If you ·find from the evidence that a retraction or correction was not published pursuant to the written notice of plaintiff of June 10, 1937, in as conspicuous a place and type as were the statements complained of, then you may award to the plaintiff and against the defendant exemplary damages in such sum as you may deem just, unless you believe from the evidence that the libelous publication was made in good faith, without malice, and under a mistake as to the facts.''

The defendant is not in position to complain of the ruling of the court in giving this instruction. Under the provisions of section 48a of the Civil Code it might have been made more favorable to plaintiff. The jury had before it the various libels which were the basis of the action and the various retractions printed by defendant. The retractions were not printed in the same locations in the newspapers as were printed the libelous articles. The headlines were clearly different in kind. One of the libels was printed under a heading in bold type which ran across the top of the newspaper. It was the duty of the jury to determine whether the retractions were fair and complete and to what extent they mitigated the damages suffered by plaintiff. (*Lawrence v. Herald Pub. Co.*, 158 Minn. 459 [122 N. W. 1084, 25 L. R. A. (N. S.) 796].) In *Turner v. Hearst*, 115 Cal. 394,

404 [47 Pac. 129], the court in referring to a retraction published by a newspaper, stated: "The question of the sufficiency or insufficiency is peculiarly a question of fact, and, therefore, peculiarly for the determination of the jury."

 It is argued that by giving instruction No. 22, above quoted, the court in effect told the jury that the retractions printed on May 25, 1937, were of no force and effect as retractions. We see no merit in this contention. The jury was instructed in three separate instructions that the retractions printed on both dates should be considered on the point of compensatory damages.

 The defendant contends that plaintiff's counsel was guilty of prejudicial misconduct. On several occasions counsel for defendant cited certain remarks of plaintiff's counsel as misconduct. We set forth the incidents concerning one of the assignments of misconduct, one which if not typical, is as serious as any of them. The record discloses: "Q. By Mr. Haight: Who was present at the time that you saw this story in the paper? Mr. Cosgrove: That is objected to on the ground it is incompetent, irrelevant and immaterial, it has no tendency to prove any of the issues of the case. The Court: I will sustain the objection at this time. Q. By Mr. Haight: Now, I suppose you got up and got dressed? A. Yes, sir. Q. And what was the next thing you did, Dr. Behrendt? Mr. Cosgrove: That is objected to on the ground it is incompetent, irrelevant and immaterial, and has no tendency to prove any of the issues of the case. I realize, in making that objection, it may or it may not be relevant, but it is entirely indefinite, and it may or may not refer to this particular matter. I think the question should be made more definite than that. I think counsel should undertake to state the subject-matter, of what it is he is proceeding to. Mr. Haight: I can appreciate the desperation with which he wants to keep that out of the record— Mr. Cosgrove: I object to that statement, if the Court please, on the ground— The Court: The jury is instructed to disregard the statement of counsel. Statements of counsel are not evidence, or any statement that the Court makes is not evidence."

The various remarks which are assigned as misconduct were made at various intervals during the trial which lasted eight days and which is called "intense" in one of the briefs. In several instances the trial court properly instructed the

jury to disregard the remarks of counsel. In its motion for a new trial defendant urged misconduct of counsel as one of the grounds for its motion, but the trial court held that there was not prejudicial misconduct. The trial judge is in a better position than an appellate court to determine whether a verdict in a given case is probably due to alleged misconduct. The conclusion reached by the trial judge should not be disturbed unless it is plainly wrong. (*Lafargue* v. *The United Railroads,* 183 Cal. 720, 724 [192 Pac. 538].) In view of all the circumstances of the present case we cannot hold that the conclusion of the trial court was wrong.

 It is contended on behalf of defendant that the verdict of $10,000 as compensatory damages is excessive. To justify interference by an appellate court with a verdict in a libel action it must appear that the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury was under the influence of passion or prejudice. (*Wilson* v. *Fitch, supra.*) In actions for libel or slander the amount of damages recoverable is peculiarly within the discretion of the jury, for there can be no fixed or mathematical rule on the subject. Questions concerning the amount of the verdict are directed primarily to the discretion of the trial court, which has the power to weigh the evidence in order to determine whether the verdict is correct in view of all the testimony in the case. The trial court has the power to set aside the verdict if it is considered to be unjust. This power is not vested in a reviewing court. (*Scott* v. *Times-Mirror Co.,* 181 Cal. 345 [184 Pac. 672, 12 A. L. R. 1007].) The trial court found no occasion to interfere with the verdict and we find no occasion to interfere with its conclusion.

Many cases have been reviewed in the briefs. In some of these large amounts have been sustained by the reviewing courts and in others the jury awards have been held to be excessive. It would prolong this discussion unnecessarily to review many of these cases. However, the case of *Scott* v. *Times-Mirror, supra,* has been cited by both parties and reference to it might be helpful. In that case the jury awarded the plaintiff $7,500 as compensatory damages and $30,000 as exemplary damages. Mr. Scott, the plaintiff, had practiced law over twenty years in his community and had achieved an enviable reputation. In his complaint he had alleged that the defendant had published a libel concerning his actions in

conducting a divorce case in the courts. In *Broughton* v. *McGrew*, 39 Fed. 672 [5 L. R. A. 406], the court instructed the jury that they could consider that there was less likelihood of a slander hurting a man of established character, whereas, "if he was a new man starting in the effort to build up a reputation, the same slander might well cause more harm". In the case under consideration Dr. Behrendt was a young professional man who was endeavoring to build up a practice in the community. He had not established an enviable reputation in his profession after a long period of practice. The jury doubtless took into consideration the fact that the libels were more likely to injure him than if he had been practicing his profession for many years.

The Scott case was decided in 1919. Since that time radical changes have taken place in conditions affecting the cost of living. This fact has been recognized by the courts in passing upon the amounts of verdicts. In *O'Meara* v. *Haiden*, 204 Cal. 354, 367 [268 Pac. 334, 60 A. L. R. 1381], the court quoted with approval from *Quinn* v. *Chicago, M. & St. P. Ry. Co.*, 162 Minn. 87 [202 N. W. 275, 46 A. L. R. 1228], in which it is stated that the courts approve of verdicts which would have been unhesitatingly set aside as excessive ten or fifteen years earlier.

The judgment is affirmed.

Crail, P. J., concurred.

McComb, J., dissented.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1939. Edmonds, J., Shenk, J., and Curtis, J., voted for a hearing. Houser, J., did not participate.