LAWRENCE *v.* HERALD PUBLISHING CO.

1. LIBEL AND SLANDER—PRIVILEGE—PUBLIC AFFAIRS.
   The public conduct of public men is a proper subject of legitimate discussion.

2. SAME.
   The publication in a newspaper of a false statement injurious to the plaintiff is not privileged although the plaintiff had been a police commissioner but was not a public officer at the time of the publication.

3. SAME—DAMAGES—MITIGATION BY A RETRACTION.
   Where an editorial was subsequently published, in response to a demand for a retraction of the libel, it was a question of fact whether it was published so far as possible in the same position as the original publication, or was published within a reasonable time, or whether reasonable and proper amends were made, in order to comply with 3 Comp. Laws, § 10425, in mitigating damages.

4. SAME—JOINT ACTION—PARTIES.
   That a judgment against a responsible defendant was rendered, for the damages found to have been sustained for the publication of a libel against the plaintiff, is not an answer to the claim of plaintiff that an error was committed as to a joint defendant found by the jury to be not liable.

Error to Kent; Perkins, J.   Submitted June 11, 1909. ( Docket No. 90.)   Decided November 5, 1909.

Case by John S. Lawrence against the Herald Publishing Company and George E. Ellis for libel.   A judgment for plaintiff against defendant Ellis alone is reviewed by plaintiff on writ of error.   Reversed.

*Smedley & Corwin,* for appellant.

*M. L. Dunham* and *Joseph Renihan,* for appellee Ellis.

*Taggart, Denison & Wilson* (*William Alden Smith,* of counsel), for appellee Herald Publishing Co.

Moore, J. This is an action for libel. The plaintiff resides in Grand Rapids. He is sixty years of age. He is, and has been for a long time, a man of prominence politically and in a business way. He was a member of the board of police and fire commissioners of the city of Grand Rapids from May, 1905, to May, 1907, and was widely known in Western Michigan. The defendant Ellis is mayor of Grand Rapids, and was first elected in April, 1906, and re-elected in April, 1908. By virtue of his office as mayor, he is a member of the board of police and fire commissioners, but has no vote. The defendant the Herald Publishing Company publishes a daily newspaper called "The Grand Rapids Herald." This newspaper has a circulation of more than 30,000 copies, two-thirds of which is outside of Grand Rapids.

By the amended charter of Grand Rapids, which went into effect in 1905, it was provided that applications for licenses to sell intoxicating liquor in Grand Rapids should be made to the board of police and fire commissioners, who should report such applications to the common council, with a recommendation thereon, 15 days after their filing. The board decided to establish a system of tabulating information respecting the conduct of the saloons, obtained by policemen on their two weeks' beats, and reported on cards, known as the card system. The plaintiff was a member of the board at this time. Defendant Ellis was opposed to the card system, and in the month of May, 1908, it was abolished by a formal vote of the board. The mayor was severely criticised for this action. On Sunday, the 24th day of May, 1908, a large number of pulpits in Grand Rapids were filled by representatives of the so-called Anti-Saloon League; the occasion being what was known as their second annual "field day." An account of this field day was given in the Grand Rapids Herald the following morning. The article is too long to quote here. It, however, criticised Mayor Ellis and his administration. Neither the plaintiff nor Charles H. Bender was mentioned therein, nor was the origin of

the card system discussed. The plaintiff had not been a police commissioner for over a year. It nowhere appears in the record that he had been referred to in any way in the meetings of which the article was an account, or that he had been present at any of them.

On the morning of May 26, 1908, the Grand Rapids Herald contained an interview with the defendant Ellis, which is the basis of this litigation, a part of which reads as follows:

" ' Somebody is either woefully ignorant or else wilfully misstates my position in regard to this card system,' said Mayor Ellis yesterday in discussing the attacks made upon him in the anti-saloon field day of Sunday. ' The abolition of the card system as formerly operated was merely what any honest administration would have demanded. I know of no city in America in which there is an honest administration in which they have such a system of spotting saloon keepers. Tammany used such a system so they could put the screws on the criminal classes when in need of votes or money. Mayor Schmitz of San Francisco used such a system so he could extort money for his personal use from the criminal classes. I suppose when John E. Lawrence and Charles H. Bender established this system here they thought the Democrats would remain in power and they would build up a little Tammany of their own. But the people declared for an honest administration, and that administration, which will not take a penny from the saloon keepers for campaign or other purposes, and which will not borrow money of them, has knocked out the card system as it was formerly operated, and demands a system by which the saloons can be kept track of every day, and punished as often as they violate the law.' "

The plaintiff read this article the morning of its publication, and on the same day demanded a retraction from each of the defendants. There appeared on May 28, 1908, in defendant's newspaper an editorial, which is claimed to be a complete retraction on its part of the libel in compliance with the statute (section 10425, 3 Comp. Laws), and was so ruled to be by the court. It is not necessary to quote this editorial at length.

Mr. Ellis sent a letter to plaintiff, which no one claims to be a retraction. He denied therein that he gave the interview as published. The plaintiff then commenced this suit. Each of the defendants pleaded the general issue. The defendant Ellis added a notice that he would "give evidence in his defense that the alleged publication is privileged, if made as alleged." The defendant Herald Publishing Company gave a like notice during the progress of the trial. Neither defendant pleaded justification. The jury found a verdict of no cause of action against the Herald Publishing Company, and of $313.70 against the defendant Ellis, divided equally between damages to feelings and damages to reputation. The case is brought here by writ of error. All assignments of error are waived, except those discussed under the following heads:

"(1) That the article was not qualifiedly privileged as charged by the circuit judge.
"(2) That the editorial, published by the Herald Publishing Company, in response to plaintiff's demand for a retraction, did not comply with the statute, and was not in the nature of a retraction in its subject-matter."

Defendant Ellis did not appeal, and it is difficult to tell from the brief filed upon his behalf what his desire is in relation to the case presented here. Counsel for the Herald Publishing Company argue a third proposition, to wit, "If error was committed, the plaintiff was not prejudiced." We will discuss the assignments of error in the order presented by counsel.

1. Was the article qualifiedly privileged? The appellee answers this question affirmatively, and insists that Mr. Lawrence and Mr. Bender had established the card system in Grand Rapids, that it was their system, and a matter of public concern, and that the system and plaintiff's connection with it were subjects of legitimate discussion, citing Odgers on Libel and Slander, p. 40, and 25 Cyc. p. 402. A reference to these authorities will show they do not sustain the ruling of the court below, and the position of counsel just stated. Undoubtedly the public con-

duct of public men is properly subject to legitimate discussion. What is legitimate discussion? The question is not new in this State. The language of Justice CAMPBELL in *Maclean* v. *Scripps*, 52 Mich. 214 (17 N. W. 815, 18 N. W. 209), is pertinent:

"Defendant claims the article was absolutely privileged. The court held that it was privileged, unless shown to be both false and published without good motives and maliciously.

"That a person may publish falsehoods of another who occupies a position in which his conduct is open to public scrutiny and criticism, without any reference to the object to be secured by the publication, is a doctrine which has no foundation that we have been able to discover. Whether this article, taken as a whole, was privileged until reason was shown to the contrary, is not now important, and need not be discussed, because the plaintiff is not the complaining party, and the ruling below went as far as possible to hold it so. That the privilege is lost by malice is elementary law in such cases. The question which the court below discussed, and which is discussed here, is whether the malice must be actual personal ill-will to plaintiff, or whether the publication of what is necessarily injurious, and done purposely and knowingly, and not for any good purpose or justifiable end, is legally malicious within the law of libel.

"Upon this we think there is no room for serious question. The term, 'malicious,' cannot be improper to designate a wilful injury without just reason. It is not claimed that there is any room to question the injurious character of this article. Neither can it be questioned that the wilful publication of it necessarily involves a design to produce such injury as is a necessary consequence of it. This being so, it would be a violation of all the analogies of legal language to hold that a wilful injury is not malicious, if made without any good cause."

In *Belknap* v. *Ball*, 83 Mich. 583 (47 N. W. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622), it was held that publications of falsehoods are never privileged. To the same effect is *Owen* v. *Dewey*, 107 Mich. 67 (65 N. W. 8). There is a full discussion of the law of libel in *Brewer* v. *Chase*, 121 Mich. 526 (80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527), and a collation of authorities.

In *Smedley* v. *Soule*, 125 Mich. 192 (84 N. W. 63), Justice GRANT, speaking for the court, said:

"It is urged that the publication was one of qualified privilege. This is not a case for the application of the rule of privilege, absolute or qualified. Defendants all admitted that they had no ground whatever for charging plaintiff with being a party to this corrupt agreement. On the contrary, they admitted in open court that plaintiff was in no way connected with the mayor in the controversy between the mayor and the council. The only defense they could make for the publication of such an article would be its truth, or their honest belief of its truth. But when it is admitted that they had no foundation for such belief, the question of privilege is excluded from consideration; and the court correctly charged the jury that the defendants were liable for whatever damages plaintiff sustained by virtue of its publication."

The plaintiff was not a public officer. So far as the record shows he did not attend the anti-saloon field day meetings, nor have any part therein. There is nothing in the record to show any justification for the reference made to him by the mayor, and no authority has been called to our attention which gave to the newspaper the privilege to repeat this interview in its more than 30,000 copies.

2. Was the editorial published a compliance with the statute? Section 10425, 3 Comp. Laws, reads as follows:

"No exemplary or punitive damages shall be recovered unless the plaintiff shall before bringing suit give notice by mail or otherwise to the defendant to publish a retraction of the libel, and allow the defendant a reasonable time in which to publish such retraction, and make such amends as are reasonable and possible under the circumstances of the case; and proof of the publication or correction shall be admissible in evidence under the general issue on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages: *Provided*, That the retraction shall be published in the same type and in the same editions of the paper as the original libel, and so far as practicable in the same position."

The trial court held that the editorial which was published in response to the demand for a retraction was a full and complete compliance with the provisions of the above section of the statute. The case of *Couch* v. *Mining Journal Co.*, 130 Mich. 294 (89 N. W. 936), is authority for the statement that, where a retraction is in writing, it is for the court to construe, but we do not understand it to be authority for the proposition that the court is to say, as a matter of law, that the retraction was published so far as practicable in the same position as the original publication, or that it was published in a reasonable time, or that in the publication which was made the defendant made such amends as are reasonable and proper under the circumstances of the case. This feature of the case presented a question of fact, and was for the jury.

3. If error was committed, was it error without prejudice, as contended for by the attorneys for appellee? Their argument is as follows—we quote from the brief:

"This is a joint suit against the Herald and Mr. Ellis. The court instructed the jury that a verdict might be rendered against both defendants, or against either one; that if a judgment was rendered against both defendants, it must be a joint one for the same amount. No complaint is made on this ruling.  *  *  *  The jury rendered a verdict against Mr. Ellis for $313.70, so that it necessarily reached the conclusion that in giving out the interview Mr. Ellis was actuated by express malice; and, under the charge of the court, the jury assessed against Mr. Ellis all of the damages which Mr. Lawrence had actually suffered, and added to these actual damages 'such an amount as you think plaintiff is entitled to recover on account of such malicious publication.'  *  *  *  The plaintiff cannot collect his damages twice. He has sued two persons jointly, and got a judgment against one for the entire amount to which, under any theory, he is entitled. It is not claimed, and will not be claimed for a moment, that his judgment against Mr. Ellis is not collectible; that the latter is not financially responsible."

In the supplemental brief counsel say they are ready to waive any costs against plaintiff to which they may be

158 MICH.—30.

entitled on the judgment rendered in the court below. These various propositions of counsel do not seem to us conclusive. As already appears, there was substantial error committed by the trial court. The plaintiff, as he had a right to do, sued both defendants. He also had the right to have his case tried against both of them according to the rules of law. This right has not been given him.

Judgment is reversed, and new trial ordered.

BLAIR, C. J., and GRANT, MONTGOMERY, and HOOKER, JJ., concurred.