GRIPMAN v. KITCHEL.

1. LIBEL AND SLANDER — CONCLUSIONS AS EVIDENCE — JUSTIFICA-
TION—MITIGATION OF DAMAGES.

While evidence was admissible, in a libel suit, to show that the
article published in defendant's paper charging plaintiff, a
city marshal, with graft, was based on certain information
secured by the reporter, no error was committed in exclud-
ing testimony of a member of the board of supervisors, which
rejected plaintiff's bill, as to the opinions of the committee
and board concerning the matter.

2. SAME—RETRACTION.

The completeness of an alleged retraction, published by defend-
ant under 3 Comp. Laws, § 10425 (5 How. Stat. [2d Ed.], §
13138), was a question for the court, in an action in which
plaintiff claimed no punitive damages.

3. SAME—EVIDENCE.

Plaintiff was rightly relieved by the court from answering a
question, on cross-examination, whether the retraction was
full and complete; defendant's counsel might have been en-
titled, if he had desired, to show its effect on plaintiff's feel-
ings, but the conclusion of the witness as to the legal effect
of the retraction was incompetent.

Error to Branch; Knowlen, J. Submitted October 16,
1912. (Docket No. 94.) Decided December 17, 1912.

Case by L. J. Gripman against Horace Kitchel for
libel. Judgment for plaintiff. Defendant brings error.
Affirmed.

*H. H. & B. E. Barlow* and *Palmer & Palmer*, for
appellant.

*L. F. Humphrey* and *F. A. Lyon*, for appellee.

KUHN, J. The plaintiff was marshal of the city of
Coldwater, in this State, on October 31, 1908, and for
some time prior thereto. The defendant was the propri-

etor and publisher of a newspaper printed and published in the city of Coldwater, and circulated generally throughout said city and Branch county, and, to some extent, in adjoining counties and elsewhere outside of the State. On or about October 12, 1908, plaintiff filed a claim with the board of supervisors of the county for services rendered in making arrests, serving warrants, and other services pertaining to the apprehension, arrest, detention, etc., of persons charged with or convicted of crime. The consideration of the bill was postponed by the board, and the plaintiff brought mandamus proceedings against the said board to compel the allowance of the bill. The bill, which was sworn to, contained two items in which he claimed fees, which upon the face of the bill showed that the work was done for violation of city ordinances. The defendant, learning of the mandamus proceedings, sent his reporter, a Mr. Dean, to the courthouse to examine into the matter and write an article. The reporter examined the sworn bill filed by the plaintiff, talked with the clerk of the board of supervisors and with several of the supervisors, the name of one of whom was, he states, Mr. Bidelman, and thereupon wrote the article which gave rise to this controversy.

The article which was published in the newspaper accuses the plaintiff of having a double graft system, and further says:

"The marshal had submitted a bill to the county for the arrest of common drunks, the bill itself stating that they were taken for violation of a city ordinance, which would itself explain that the expense incurred should be met by the city."

After the publication of the article, Mr. Gripman served upon the defendant a notice to retract, whereupon the defendant published what is claimed to be a full and complete retraction of the article. Suit was instituted by the plaintiff against the defendant, which resulted in a verdict by the jury of $1,200 rendered in favor of plaintiff, $400 of which was specified as damages to plaintiff's feel-

ings, and $800 damages to his reputation. Defendant now seeks to review the judgment by writ of error in this court.

On the trial of the cause, for the purpose of showing the source of defendant's information, his good faith in publishing the article, and to rebut the presumption of malice on the part of defendant, in mitigation of damages, Mr. P. J. Rathburn, one of the supervisors of the county, was produced as a witness on behalf of the defendant. He was asked whether there was anything said at the time that the matter was brought before the board of supervisors as to how the members of the committee looked at the action of Mr. Gripman in filing the bill. He was not allowed to answer this question by the trial court, and at the close of the testimony, and before the defendant had rested his case, counsel also offered the testimony of a number of the supervisors of the county, at which time the following colloquy occurred between counsel and the court:

"*Mr. Barlow:* May it please the court, yesterday, I offered the testimony upon the question of rumor. This morning we desire to offer the same testimony, or the same class of testimony, and also in justification of the alleged slanderous article. It is offered in connection with what is stated in the plaintiff's declaration on page 8.

"*The Court:* What testimony do you offer?

"*Mr. Barlow:* The testimony of the supervisors bearing upon the reason why the bill was tabled, as showing how the bill appealed to the supervisors, as published in the article in the Reporter.

"*The Court:* Is there objection to the offer?

"*Mr. Lyon:* There most certainly is. It cuts no figure what their reason was.

"*The Court:* It is offered for a twofold purpose, first in mitigation?

"*Mr. Barlow:* Yes, sir.

"*The Court:* Gentlemen, I may be in error, but I don't think the testimony is admissible for either purpose. To which ruling of the court the defendant by its counsel in open court then and there duly excepted."

The failure of the court to admit this testimony is made the basis of assignments of error.

While it was competent for the defendant or his reporter to show particularly the information upon which they wrote and published the statement, it does not seem to us to be competent, in order to justify libelous charges, to show the expressions of opinion of the supervisors. They could not be said to be in mitigation of damages, because the mitigating circumstances would only be what actually inspired the publication of the article and this could only be proven by showing what actually came to the mind of Mr. Kitchel and his reporter before the article was published. In the case of *Brewer* v. *Chase*, 121 Mich., at page 539 (80 N. W. 579, 46 L. R. A. 397, 80 Am. St. Rep. 527), Mr. Justice HOOKER, speaking for the court, said:

" Much testimony was admitted tending to show that the plaintiff had been charged with the offenses described in the alleged libel. It was competent to show in mitigation of damages that the defendant had heard that such charges had been made, but it was unimportant whether other persons had heard them or not. * * * It was insisted that it was competent to show that the statements contained in the libel were literally true, whether the charges which they reflected were true or not. We have already shown that it was necessary to prove the truth of the latter to make out a justification. Nothing less would do. It was incompetent to prove the former."

See, also, *Schattler* v. *Daily Herald Co.*, 162 Mich. 115 (127 N. W. 42); *Atkinson* v. *Detroit Free Press Co.*, 46 Mich. 341 (9 N. W. 501).

Upon the cross-examination of plaintiff by defendant's counsel, he was questioned regarding the retraction which had been published, and the following questions were asked:

"*Q.* Did you read it at the time it was published?

"*A.* Oh, yes; I was quite a student of the paper about that time.

"*Q.* It was a pretty full and complete retraction in your judgment, wasn't it?

"*Mr. Humphrey:* Now, just a moment, that should be left to the jury.

"*Mr. Palmer:* I have a right to find out how it affected him.

"*Mr. Humphrey:* Not whether or not it was a complete retraction. (Question read.)

"*Mr. Humphrey:* I object to that because the retraction should be left to the jury as to whether it was full and complete.

"*The Court:* It seems to me that is a good objection, is it not?

"*Mr. Palmer:* The question possibly may be objectionable. There isn't any sort of question but what it is for the jury, but he is suing for damages to his feelings, and I have a right to show from the witness himself whether the retraction did not repair his feelings.

"*Mr. Lyon:* That wasn't quite your question was it, Judge?

"*Mr. Palmer:* That was the object of the question, Mr. Lyon.

"*The Court:* You did not mean complete in the sense of a legal retraction under the statute?

"*Mr. Palmer:* Well, I don't care for his conclusion on that because we will read it to the jury.

"*The Court:* I understand your question is, was it satisfactory to him? That is what you mean by it?

"*Mr. Palmer:* Substantially, yes.

"*Q.* Didn't you think it a fair retraction of the article complained of?

"*The Court:* You still object?

"*Mr. Humphrey:* I do.

"*The Court:* I will have to sustain the objection, Judge. To which ruling of the court the defendant by his counsel in open court then and there duly excepted."

Error is assigned because of the ruling of the court excluding the questions asked. Section 10425, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13138), provides as follows:

"No exemplary or punitive damages shall be recovered unless the plaintiff shall before bringing suit give notice by mail or otherwise to the defendant to publish a retraction of the libel, and allow the defendant a reasonable time in which to publish such retraction, and make such amends as are reasonable and possible under the circumstances of the case; and proof of the publication

or correction shall be admissible in evidence under the general issue on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages: *Provided,* that the retraction shall be published in the same type and in the same editions of the paper as the original libel, and so far as practicable in the same position."

A retraction having been published, no claim was made in this case for punitive or exemplary damages. The retraction being in writing, the question whether it was full or complete was a question of law for the court, and not a question of fact for the jury, if that question had been in issue.

The questions asked of the witness on cross-examination and ruled out by the court called for the opinion of the witness as to the legal construction to be placed upon this retraction. We think it would have been competent for counsel to have asked the witness what effect the retraction had on his feelings, and an examination of the excerpt from the record set forth above discloses that a clear intimation was given counsel by the court that such a question would have been permitted. The circuit judge did not err in excluding the questions asked.

Judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.