[No. B037342. Second Dist., Div. Two. Mar. 7, 1989.]

TWIN COAST NEWSPAPERS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
PHYLLIS L. McKINNEY et al., Real Parties in Interest.

**COUNSEL**

Gibson, Dunn & Crutcher, Rex S. Heinke and Sheila R. Caudle for Petitioners.

No appearance for Respondent.

Buck, Ammirato, Rutter & Moore, Vincent A. Ammirato and Eric C. Demler for Real Parties in Interest.

## OPINION

FUKUTO, J.—

### I

In a libel case, by statute, a newspaper owner, by publishing a sufficient retraction, gains immunity from liability for general or punitive damages, remaining responsible only for any special damages suffered by the defamed plaintiff. To be sufficient for this purpose, the retraction must appear "in substantially as conspicuous a manner in said newspaper . . . as were the statements claimed to be libelous." (Civ. Code, § 48a.)[1] The issues presented in this mandate proceeding are whether the sufficiency of the retraction is a question for court or for jury, and, if the latter, whether undisputed facts nonetheless compel the conclusion that the retractions published by petitioners were adequate as a matter of law. The superior court agreed with plaintiffs that the issue must be resolved by the jury, and the defendants seek a writ.

### II.

On August 19, 1987, in a sensationally brutal attack, a woman and her six-year-old daughter were immolated; two suspects were arrested and

---

[1] Section 48a, subdivisions 1 and 2 provide: "1. In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous.

"2. If a correction be demanded within said period and be not published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous, in a regular issue thereof published or broadcast within three weeks after such service, plaintiff, if he pleads and proves such notice, demand and failure to correct, and if his cause of action be maintained, may recover general, special and exemplary damages; provided that no exemplary damages may be recovered unless the plaintiff shall prove that defendant made the publication or broadcast with actual malice and then only in the discretion of the court or jury, and actual malice shall not be inferred or presumed from the publication or broadcast."

accused of the crime. On August 20, the Long Beach Press-Telegram, owned by petitioner Twin Coast Newspapers, Inc., printed a front-page article containing a false report that one of the arrested suspects was the daughter of Phyllis McKinney, the owner of a Long Beach nursery school, and was employed at the school, and that the child victim was enrolled there. The article's headline read, "6-year-old girl survives torching, mother killed." The subheadline read, "McKinney preschool employee, man are booked for murder."

The day the article appeared, McKinney demanded a retraction. She commenced this action on September 1, 1987. Later, a corporation apparently controlled by her joined as plaintiff. Defendants are the newspaper's owner and three individuals: the reporter who wrote the article, a second reporter, and the publisher. Section 48a appears to cover these defendants as well. (See *Field Research Corp.* v. *Superior Court* (1969) 71 Cal.2d 110 [77 Cal.Rptr. 243, 453 P.2d 747].)

The defamatory article appeared in both editions of the August 20 issue. Retractions appeared in both editions on August 21 and September 10. The error was additionally acknowledged in both editions on September 4 (in an article reporting the filing of the libel action) and on September 7 (as an editor's note following a letter to the editor headed "Insufficient apology"). Petitioners characterize these acknowledgements as retractions as well.

In the trial court, petitioners moved for an order summarily adjudicating that the retractions, individually and collectively, were "published in substantially as conspicuous a manner as the statements from the August 20 article." (This assertion did not extend to the September 4 publication, but the omission appears to have been unintentional.) Petitioners contended (1) whether the retractions were sufficiently conspicuous is a question for decision by the court, and the court should resolve that question in petitioners' favor, not in plaintiffs'; and (2) even if it were to rule the issue is ordinarily one for the jury, the court should find that under the facts of this case reasonable jurors could reach only the conclusion that the retractions were sufficient.

The trial court denied the motion, and this petition followed. We reject petitioners' first contention, but sustain the second.

### III.

The precedents are sparse. In *Turner* v. *Hearst* (1896) 115 Cal. 394, 404 [47 P. 129], Department Two of the Supreme Court, discussing a retraction, said, "The question of the sufficiency or insufficiency is peculiarly a question

of fact, and, therefore, peculiarly for the determination of the jury." This pronouncement is not controlling, however, for the "sufficiency" of a retraction had a different meaning at that time. The rule was that a retraction could be considered in mitigation of damages (see 115 Cal. at p. 402), and thus a jury in every case involving a retraction was required to evaluate the extent to which the initial harm to the plaintiff's reputation was undone by the retraction.

With the enactment of section 48a in 1931, retractions assumed an additional significance: publication of a retraction meeting the statutory standard eliminates liability for specified types of damages. ■ A retraction can also be used by both parties as circumstantial evidence on issues of malice. (See *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1012 [193 Cal.Rptr. 206, 49 A.L.R.4th 1125].)

In *Behrendt* v. *Times-Mirror Co.* (1938) 30 Cal.App.2d 77, 87-89 [85 P.2d 949], a section 48a case, the trial court had instructed the jury to determine whether the retraction was published as conspicuously as the defamatory statements, and on appeal the defendant contended the jury should instead have been directed that the retraction was "full, fair and complete." We affirmed, reasoning that because there was evidence the retractions were not printed in the same locations or under the same kinds of headlines as the libelous articles, it was for the jury to determine their sufficiency. We repeated what was declared in *Turner* v. *Hearst,* that the question of the sufficiency or insufficiency of a retraction is peculiarly a question of fact for the jury. This was a reference not to the determination of what effect the retraction had on the plaintiff's reputation, as in *Turner* v. *Hearst,* but rather to the determination of the retraction's sufficiency under the standard defined in section 48a.

■ *Behrendt* is not undermined by the subsequent 1945 amendment to section 48a, for the change the amendment made to the definition of a sufficient retraction ("as conspicuous a place and type" were changed to "substantially as conspicuous a manner") was not sufficiently fundamental to transform what was previously a question of fact into one of law. The major change made by the 1945 amendment—elimination of the requirement of a good faith mistake—has no bearing on the question of the sufficiency of the retraction.[2]

---

[2] Prior to the 1945 amendment, section 48a read: "In any action for damages for the publication of a libel in a newspaper, if the defendant can show that such libelous matter was published through misinformation or mistake, the plaintiff shall recover no more than actual damages, unless a retraction be demanded and refused as hereinafter provided. Plaintiff shall serve upon the publisher at the place of publication a notice specifying the statements claimed to be libelous, and requesting that the same be withdrawn.

The trial court thus properly regarded our decision in *Behrendt* as controlling.

The parties make much of two other California cases in the area, but they are unhelpful. In *Howard* v. *Southern Cal. etc. Newspapers* (1950) 95 Cal.App.2d 580, 586 [213 P.2d 399], which affirmed the sustaining of a demurrer on the ground the publication was not libelous, the court remarked that the retraction appeared "as full and fair as plaintiff had a right to expect." In *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1012 [193 Cal.Rptr. 206, 49 A.L.R.4th 1125], which held the retraction statute inapplicable to a magazine, in discussing the evidence supporting punitive damages we remarked on the insufficiency of the defendant's evasive retraction.

Outside our California courts, there is only one case with a holding squarely on the issue, and it follows *Behrendt* without discussion. (*Boswell* v. *Superior Court, etc.* (1980) 125 Ariz. 307 [609 P.2d 577].) Other cases mentioning the issue tend to support *Behrendt*. See *Sargent* v. *National Broadcasting Company* (N.D. Cal. 1955) 136 F. Supp. 560, 565 (under California law, a question of fact for the jury); *Nevada Ind. Broadcasting Corp.* v. *Allen* (1983) 99 Nev. 404 [664 P.2d 337, 345, 37 A.L.R.4th 1070] (question for the jury); *Brogan* v. *Passaic Daily News* (1956) 22 N.J. 139 [123 A.2d 473, 478] [overruled on an unrelated point in *Maressa* v. *New Jersey Monthly* (1982) 89 N.J. 176 [445 A.2d 376, 386] (question for the jury); *Knoxville Pub. Co.* v. *Taylor* (1948) 31 Tenn.App. 368 [215 S.W.2d. 27, 30] (same); *Lawrence* v. *Herald Pub. Co.* (1909) 158 Mich. 459 [122 N.W. 1084, 1086] (same); *Rudin* v. *Dow Jones & Co., Inc.* (S.D.N.Y. 1981) 510 F. Supp. 210, 217 ("there is some support" for the position that under California law the question is for the jury). A few cases may support the contrary view. *Gripman* v. *Kitchel* (1912) 173 Mich. 242 [138 N.W. 1041, 1042] (question of law for the court); *Gray* v. *Times Newspaper Co.* (1898) 74 Minn. 452 [77 N.W. 204, 206] (same); *Goolsby* v. *Forum Printing Co.* (1912) 23 N.D. 30 [135 N.W. 661, 664] (ambiguous: "Under the facts, it is entirely clear that such retraction was wholly insufficient under the statute"). The Restatement of Torts is unilluminating on the point. (See Rest.2d Torts, §§ 614-619.)

---

"If a retraction or correction thereof be not published in as conspicuous a place and type in said newspaper as were the statements complained of, in a regular issue thereof published within two weeks after such service, plaintiff may allege such notice, demand, and failure to retract in his complaint and may recover both actual, special and exemplary damages if his cause of action be maintained. If such retraction be so published, he may still recover such actual, special, and exemplary damages, unless the defendant shall show that the libelous publication was made in good faith, without malice, and under a mistake as to the facts."

## IV.

Our own analysis reconfirms what we said in *Behrendt*. ■ A question of law requires a determination of the rules prescribed by the state for the determination of legal relations; a fact is "the concrete occurrence constituting the contingency in which the State predicates this relation." (1 Wigmore, Evidence (3d ed. 1940) § 1.) ■ Under this formulation it is hard to see how the question whether one newspaper article was substantially as conspicuous as another could be characterized as a question of law. It is true that the interpretation of a written instrument is a function for the court. (Evid. Code, § 310; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Accordingly, it has been held that the adequacy of the contents of a plaintiff's retraction demand, which must "[specify] the statements claimed to be libelous and [demand] that the same be corrected," is a question for decision by the court. (*Gomes* v. *Fried* (1982) 136 Cal.App.3d 924, 936 [186 Cal.Rptr. 605].)[3] Similarly, whether a publication is "a fair and true report" of an official governmental proceeding (see Civ. Code, § 47, subd. 4) has been held a question for the court when there is no factual dispute over what occurred in the official proceeding or what was said in the defendant's published report. (*McClatchy Newspapers, Inc.* v. *Superior Court* (1987) 189 Cal.App.3d 961, 976 [234 Cal.Rptr. 702].) In contrast, the question of conspicuousness of a retraction is not one of interpretation.

## V.

■ Finally, petitioners contend no reasonable juror could find the retractions insufficient under the statutory standard. This question must be examined with special care, for in libel cases a court's failure to summarily adjudicate factual issues not in material dispute inflicts an unnecessary burden on the strong public interest in journalistic freedom.

A close comparison of the September 10 retraction with the defamatory article leaves no doubt that the retraction was as conspicuous as plaintiffs could expect. The retraction appeared in the same location as the defamatory subheadline. The retraction's headline ("P-T story in error on McKinney School") appeared in larger type than the defamatory subheadline, and it both identified the McKinney school by name and stated that the story had been in error. The body of the retraction fully corrected every aspect of the defamatory publication, without reservation or evasion, acknowledged that

---

[3] The same case, however, treats as a jury question another issue arising under section 48a: whether plaintiff complied with the statutory requirement that he "shall serve [the retraction demand] upon the publisher, at the place of publication." (*Id.* at p. 936, fn. 4.)

the earlier report was erroneous, and expressed the publisher's regret over the error. Plaintiffs could scarcely have expected more; nor was more required by the law.

The alternative writ is discharged. Let a peremptory writ of mandate issue, directing respondent to set aside its order denying petitioners' motion for summary adjudication of issues, and enter a new order consistent with this opinion. Each party will bear its own costs.

Roth, P. J., and Gates, J., concurred.

A petition for a rehearing was denied March 23, 1989, and petitioners' application for review by the Supreme Court was denied June 1, 1989. Lucas, C. J., did not participate therein.