[No. H003283. Sixth Dist. Oct. 30, 1989.]

LOREN PIERCE, Plaintiff and Appellant, v.
SAN JOSE MERCURY NEWS et al., Defendants and Respondents.

COUNSEL

Robert L. Mezzetti and Oscar R. Roesler for Plaintiff and Appellant.

Peter W. Davis, John E. Carne, Ezra Hendon, Jenny D. Smith and Crosby, Heafey, Roach & May for Defendants and Respondents.

OPINION

COTTLE, J.—In this action for libel and intentional infliction of emotional distress, the trial court granted defendant newspaper's motion for summary judgment after it was admitted that plaintiff suffered no special damages as the result of an allegedly libelous publication. Earlier the court had

determined, in a motion for summary adjudication of issues, that plaintiff was limited to special damages because the newspaper had printed a retraction in "substantially as conspicuous a manner . . . as were the statements claimed to be libelous." (Civ. Code, § 48a.)[1] On appeal, plaintiff contends that the court erred when it decided as a matter of law that the retraction was sufficiently conspicuous to immunize the newspaper from general and punitive damages. We shall hold that the issue of whether a retraction is sufficiently conspicuous is a material, triable issue of fact for the jury to decide. Accordingly, we reverse the summary judgment.

## FACTS

Captain Loren Pierce is a 34-year veteran of the Santa Clara Police Department who retired in August 1985. In 1982, Pierce was assigned to head the specific crime action team (SCAT), an elite unit formed in 1980 to conduct undercover operations dealing with drugs, prostitution and other specific crimes. During the fall of 1984, the internal affairs unit of the police department conducted an investigation of SCAT which resulted in formal disciplinary actions against several members of the unit. The alleged incidents of misconduct included drinking on duty, misuse of funds, alteration of expense reports, negligent firing of a weapon, use of marijuana and other illegal narcotics, and failing to report damage to a city-owned car.

Miranda Ewell, a reporter for the San Jose Mercury News, reported on this investigation in the November 30, 1984, morning edition. The article appeared on page one and was headlined: "Santa Clara Cops Accused in Drug, Expense Probe." In the second sentence of the article, she reported that the investigation "resulted in the resignation of one officer and disciplinary actions for eight others, including a captain and a lieutenant." Later

---

[1] All further statutory references are to the Civil Code. Section 48a, subdivisions 1 and 2 provide: "In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous. [¶] 2. If a correction be demanded within said period and be not published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous, in a regular issue thereof published or broadcast within three weeks after such service, plaintiff, if he pleads and proves such notice, demand and failure to correct, and if his cause of action be maintained, may recover general, special and exemplary damages; provided that no exemplary damages may be recovered unless the plaintiff shall prove that defendant made the publication or broadcast with actual malice and then only in the discretion of the court or jury, and actual malice shall not be inferred or presumed from the publication or broadcast."

on in the article, the captain was identified as plaintiff Pierce. Of the nine officers discussed in the article, Pierce was listed first. The article stated that "Capt. Loren Pierce, one of the three captains who report to the assistant police chief, was given an official letter of reprimand."

Pierce, in fact, was not disciplined, and he was not given an official letter of reprimand. The officers investigating SCAT, however, did conclude that Pierce had inadequately supervised the unit.

At 11:30 a.m. and again at 1 p.m. on the day the article was printed, Assistant Chief of Police Frank Vasquez called the newspaper and talked to Maline Hazel, Ewell, and Ewell's supervisor and editor, Tim Clark. Vasquez advised them of a total of 12 errors in the article, including the assertions that Pierce was disciplined and that he had received an official letter of reprimand. He allegedly asked if corrections could be made before the afternoon edition, and was told it was not too late. Captain Pierce also spoke with Ewell and told her that he had not been disciplined and had not received a letter of reprimand.

Despite these calls, the same article was printed in the afternoon edition. This time, however, the story appeared at the top of the front page, headlined across the top of the paper in large bold type: "Santa Clara Cops Accused: Drug use, expenses probed." (In the morning edition, the article appeared on the bottom right hand corner of the front page.)

The next day, the newspaper published an article under the headline, "Police Officials Dispute Extent of Misconduct." Thereafter, on December 11, 1984, Pierce allegedly mailed a written retraction demand to the paper.[2]

On Christmas morning, December 25, 1984, the newspaper printed a retraction in its regular "Setting the Record Straight" column on page two of the paper. The retraction stated: "A November 30 Mercury News article

---

[2] The court properly determined that there was a triable issue of fact as to whether a proper retraction demand had been made. Pierce declared that he helped his attorney draft the retraction letter on December 11 and that, after it was typed, he signed it. A copy of the letter was attached to his declaration. Pierce's attorney's secretary declared that she typed the letter, addressed the envelope, prepared it for certified mail by filling out postal form 3811, and placed the envelope, with correct postage, in a basket for mailing. She further declared that the form 3811 was returned and placed in her basket for filing, but that the form has since disappeared. At her deposition, she admitted she didn't remember specifically typing the letter, but she stated that she had handwritten the word "file" on the office's copy of the letter. An editor for the newspaper declared that the newspaper never received the retraction demand, and an employee of the postal service declared that there was no record of a *registered letter* having been sent from Pierce to the newspaper. The postal employee went on to state that it was "inconclusive" if a letter had been sent by *certified mail* because "no records are retained for certified mail."

inaccurately reported two disciplinary actions resulting from an internal investigation in the Santa Clara Police Department. The errors resulted from inaccurate information supplied by a source familiar with the case and from the department's refusal to disclose specific disciplinary actions. [¶] Capt. Loren Pierce did not receive a letter of reprimand and was not disciplined. . . ."

Pierce filed his complaint for damages on January 25, 1985, alleging that he had been libeled and that the newspaper had intentionally inflicted emotional distress on him. The complaint was amended by stipulation of the parties on June 20, 1985.

Thereafter the newspaper moved for summary judgment or, in the alternative, summary adjudication of issues. After a hearing, the court denied summary judgment, granted summary adjudication as to certain issues, and denied it as to other issues. The court refused to hold as a matter of law that the statement about Pierce was "fair and true within the meaning of Civil Code Section 47(4)" or that it was "substantially true." Nevertheless, the court did determine as a matter of law that the paper's retraction complied with section 48a and, therefore, that plaintiff was limited to special damages. Because there was a possibility that Pierce might have suffered some special damages, the court refused to grant summary judgment. The court, however, pointed out: "If you can establish that there are no special damages suffered by the plaintiff in this case you are obviously going to be entitled to a judgment. And it seems to me that I wouldn't foreclose you from eliminating a trial if you can establish that." Pierce's motion for reconsideration of this order and his subsequent petition for writ of mandate to the Court of Appeal were denied.

After discovery established that Pierce suffered no special damages as a result of the allegedly libelous articles, the paper again moved for summary judgment. The motion was granted on May 5, 1987, and this appeal followed.

DISCUSSION

■ Pierce contends that the court erred when it determined as a matter of law that the newspaper's retraction was printed in "substantially as conspicuous a manner in said newspaper . . . as were the statements claimed to be libelous." We agree.

Under California law, a newspaper gains immunity from liability for all but "special damages"[3] when it prints a retraction satisfying the requirements of section 48a. The issue on appeal is whether the court or the jury should decide whether the retraction is sufficiently conspicuous. We believe, as have all California courts which have considered this issue, that the question is one for the jury.

In the recent opinion in *Twin Coast Newspapers, Inc.* v. *Superior Court* (1989) 208 Cal.App.3d 656 [256 Cal.Rptr. 310], the Second District Court of Appeal acknowledged that the "precedents are sparse." (*Id.,* at p. 659.) Nevertheless, it concluded that the question of the sufficiency of a retraction was a factual issue to be determined by the jury. The court first discussed language from the 1896 Supreme Court opinion in *Turner* v. *Hearst* (1896) 115 Cal. 394, 404 [47 P. 129], to the effect that "the sufficiency or insufficiency [of a retraction] is peculiarly a question of fact, and, therefore, peculiarly for the determination of the jury." That language, the *Twin Coast* court found, was "not controlling, however, for the 'sufficiency' of a retraction had a different meaning at that time." (208 Cal.App.3d at p. 660.) It noted that with "the enactment of section 48a in 1931, retractions assumed an additional significance: publication of a retraction meeting the statutory standard eliminates liability for specified types of damages." (*Ibid.*)

The court then examined its own opinion in *Behrendt* v. *Times-Mirror Co.* (1938) 30 Cal.App.2d 77, 87-89 [85 P.2d 949]. In that case the trial court had instructed the jury to determine whether a retraction was published as conspicuously as the defamatory statements, and on appeal the newspaper argued that the jury should have received different instructions. The Second District affirmed, "reasoning that because there was evidence the retractions were not printed in the same locations or under the same kinds of headlines as the libelous articles, it was for the jury to determine their sufficiency." (*Twin Coast Newspapers, Inc.* v. *Superior Court, supra,* 208 Cal.App.3d at p. 660.) The court "repeated what was declared in *Turner* v. *Hearst,* that the question of the sufficiency or insufficiency of a retraction is peculiarly a question of fact for the jury." (*Ibid.*)

The court further held that the 1945 amendment to section 48a, changing the definition of a sufficient retraction from "as conspicuous a place and type" to "substantially as conspicuous a manner" was not sufficiently fundamental to transform what was previously a question of fact into one of law. This change in wording may have been the result of the inclusion of

---

[3] Special damages are defined in section 48a, subdivision 4(b) as: "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other . . . ."

"slander by a radio broadcast" within the scope of section 48a. Previously that section only applied to "libel in a newspaper." Obviously, there is no "place" or "type" in a radio broadcast, and the word "manner" could apply to both types of publications.

The *Twin Coast* court then noted that "[o]utside our California courts, there is only one case with a holding squarely on the issue, and it follows *Behrendt* without discussion. [Citation.] Other cases mentioning the issue tend to support *Behrendt*. [Citations.]" (208 Cal.App.3d at p. 661.)

Not relying solely on these precedents, the *Twin Coast* court declared that its own "analysis reconfirms what we said in *Behrendt*. A question of law requires a determination of the rules prescribed by the state for the determination of legal relations; a fact is 'the concrete occurrence constituting the contingency in which the State predicates this relation.' (1 Wigmore, Evidence (3d ed. 1940) § 1.) Under this formulation it is hard to see how the question whether one newspaper article was substantially as conspicuous as another could be characterized as a question of law. It is true that the interpretation of a written instrument is a function for the court. (Evid. Code, § 310; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Accordingly, it has been held that the adequacy of the contents of a plaintiff's retraction demand, which must '[specify] the statements claimed to be libelous and [demand] that the same be corrected,' is a question for decision by the court. (*Gomes* v. *Fried* (1982) 136 Cal.App.3d 924, 936 [186 Cal.Rptr. 605].) Similarly, whether a publication is 'a fair and true report' of an official governmental proceeding (see Civ. Code, § 47, subd. 4) has been held a question for the court when there is no factual dispute over what occurred in the official proceeding or what was said in the defendant's published report. (*McClatchy Newspapers, Inc.* v. *Superior Court* (1987) 189 Cal.App.3d 961, 976 [234 Cal.Rptr. 702].) In contrast, the question of conspicuousness of a retraction is not one of interpretation." (208 Cal.App.3d at p. 662, fn. omitted.)

The newspaper responds to the *Twin Coast* case by claiming that Minnesota, in an 1898 case, Maine, in an 1854 case, Michigan, in a 1902 case, and New Jersey, in a 1956 case, have treated the issue of the adequacy of a retraction as a question of law to be resolved by the court. None of the cases, however, deal with the issue of the conspicuousness of a retraction vis-à-vis the original defamatory publication. *Gray* v. *Times Newspaper Co.* (1898) 74 Minn. 452 [77 N.W. 204, 206] concerned whether a "retraction in a given case [was] a full and fair one, within the meaning of the [Minnesota] statute . . . ." *Brogan* v. *Passaic Daily News* (1956) 22 N.J. 139 [123 A.2d 473, 477] (revd. on other grounds in *Maressa* v. *New Jersey Monthly* (1982)

89 N.J. 176 [445 A.2d 376]) considered whether a retraction was "full and unequivocal." The *Brogan* court then cited the California case, *Behrendt* v. *Times Mirror Co., supra,* 30 Cal.App.2d 77, for the proposition that the question whether a "retraction [is made] in as public a manner as that in which the charges were made" is a "mixed question[] of law and fact . . . , and if reasonable men can disagree in their conclusions with respect thereto the question should be submitted to the jury. . . ." (*Brogan* v. *Passaic Daily News, supra,* 123 A.2d at p. 478.)

Although the *Twin Coast* court determined that the conspicuousness of a retraction is a question of fact for the jury, it held that, under the facts of that case, no reasonable juror could find the retractions insufficient under the statutory standard. Consequently, the court issued a peremptory writ of mandate directing the trial court to enter summary adjudication in favor of defendants. In *Twin Coast,* the "*retraction appeared in the same location* as the defamatory subheadline. *The retraction's headline* ('P-T story in error on McKinney School') *appeared in larger type* than the defamatory sub-headline, and it both identified the McKinney school by name and stated that the story had been in error. The body of the retraction fully corrected every aspect of the defamatory publication, without reservation or evasion, acknowledged that the earlier report was erroneous, and expressed the publisher's regret over the error." (208 Cal.App.3d at pp. 662-663, italics added.)

In the present case, in contrast, the retraction had no headline other than the usual "Setting the Record Straight," and it was found on the bottom of page two in a holiday edition of the paper. The defamatory statement, on the other hand, appeared in the lead story in the afternoon edition. It was headlined "Cops Accused," and in the second sentence mentioned a captain. Of the nine "cops accused," Pierce was named first. This is simply not a case in which no reasonable juror could find the retraction insufficient under the statutory standard. Accordingly, the question should have been submitted to the jury for its consideration.

■ As a final argument, the newspaper contends that the summary judgment is sustainable on the alternate ground that the report was fair and true and therefore absolutely privileged under Civil Code section 47, subdivision 4. The newspaper raised the same argument at the summary judgment hearing below, to which the court responded: "The report was untrue as to Captain Pierce. [¶] And because it was untrue, even though there was a whole range of things that was accurate, and even though the sum and substance of everything else may have been true, the only thing that really affected Captain Pierce was the statement about him. [¶] So that I don't think I can say that it is a fair and true report of the hearing, or the process

so far as Captain Pierce was concerned." Where, as here, reasonable minds could disagree on what is fair, the issue is a question of fact to be determined by the jury. (See *Handelsman* v. *San Francisco Chronicle* (1970) 11 Cal.App.3d 381, 386 [90 Cal.Rptr. 188]; *McClatchy Newspapers, Inc.* v. *Superior Court, supra,* 189 Cal.App.3d at p. 976.)

The judgment is reversed. Costs on appeal to appellant.

Capaccioli, Acting P. J., and Fogel, J.,* concurred.

A petition for a rehearing was denied November 16, 1989, and respondents' petition for review by the Supreme Court was denied January 18, 1990.

---

* Assigned by the Chairperson of the Judicial Council.